39 F.3d 1175
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Dwight S. ARNOLD, Plaintiff-Appellant,
v.
UNITED STATES of America, Defendant-Appellee.
 No. 94-1548.
 United States Court of Appeals, Fourth Circuit.
 Argued: September 30, 1994.
Decided: October 31, 1994.
 
 Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. Terrence W. Boyle, District Judge. (CA-93-229-5-BO)
 George W. Lennon, Monroe, Wyne & Lennon, P.A., Raleigh, North Carolina, for Appellant.
 Rudolf A. Renfer, Jr., Office of the United States Attorney, Raleigh, North Carolina, for Appellee.
 J. Gregory Wallace, Monroe, Wyne & Lennon, P.A., Raleigh, North Carolina, for Appellant.
 Janice McKenzie Cole, United States Attorney, Linda Kaye Teal, Assistant United States Attorney, Charlton C. Walker, Third Year Law Student, Duke University School of Law, Raleigh, North Carolina, for Appellee.
 Before HAMILTON and LUTTIG, Circuit Judges, and MERHIGE, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Appellant, Dwight Arnold, was injured in an accident when his automobile collided with the personal automobile of Sergeant Eddie Lee Edwards III, of the United States Army. In the district court, Arnold alleged that the United States, the appellee, was liable under the Federal Tort Claims Act (FTCA), 28 U.S.C. Secs. 1346(b) and 2671-2680. The district court found that Sergeant Edwards was acting outside the scope of his employment at the time of the collision and dismissed the complaint for lack of subject matter jurisdiction, Fed.R.Civ.P. 12(b)(1). Arnold appeals this decision and we now affirm.
 
 
 2
 * On April 9, 1990, Sergeant Edwards was employed as the Recruiter Trainer for the United States Army Recruiting Command in Raleigh, North Carolina. On that date, Sergeant Edwards drove his personal car to his recruiting office at approximately 8:30 A.M. and parked the car. During the day, he drove an assigned government car to call on and train new recruiters.
 
 
 3
 Late in the afternoon, Sergeant Edwards returned to his office and parked the assigned government car. Thereafter, he telephoned his friend, Jimmie White, and told him he was coming over to his house to watch a ball game. Sergeant Edwards left his office driving his personal automobile and headed north on his way to White's house. At approximately 6:09 P.M., Edwards' automobile and Arnold's automobile collided, resulting in injuries to Arnold.
 
 
 4
 According to Arnold, Sergeant Edwards told him, at the scene of the accident, that "he [Sergeant Edwards] was on official business in his private vehicle." (J.A. 36). In addition, according to Arnold, later at Raleigh Community Hospital, Sergeant Edwards allegedly told Arnold's friend, Polly Godwin, that "he was a recruiter and was on the job at the time of his accident with Dwight." (J.A. 37).[1]
 
 
 5
 In November 1991, George Lennon, Arnold's attorney, called Sergeant Edwards.[2] Arnold and Sergeant Edwards each have their own version of the conversation that ensued.[3] Arnold contends that Lennon told Sergeant Edwards that he was Arnold's attorney and wanted to ask some questions. Thereafter, Lennon asked Sergeant Edwards whether he was acting in an official capacity while driving his personal car at the time of the accident and Sergeant Edwards answered that he was taking some papers back to Battalion Headquarters.
 
 
 6
 Sergeant Edwards' version of the tape recorded conversation is quite different from Lennon's version in that Sergeant Edwards contends Lennon told him that: (1) Arnold was about to sue him for money he did not have; (2) it would be better for him to say that he was working at the time of the accident because the Army would stand behind him; and (3) Arnold would pursue the government for his damages. In his affidavits, Sergeant Edwards explains that he told Lennon he was headed toward Battalion Headquarters out of fear of losing his house and the financial impact a damage award would have on his family.[4]
 
 
 7
 Importantly, the accident at issue occurred far from any possible route between Sergeant Edwards' office and Battalion Headquarters. At the time of the accident, Sergeant Edwards was travelling north in a direction toward White's house, but away from his office and Battalion Headquarters, which were located to the south.[5]
 
 
 8
 Arnold brought an action against the United States under the FTCA to recover damages for injuries sustained as a result of the accident. On July 7, 1993, the government moved to dismiss the complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. See Fed.R.Civ.P. 12(b)(1) and 12(b)(6).
 
 
 9
 On January 19, 1994, the district court granted the government's motion to dismiss. Notably, in the first paragraph of the district court's order, it states that it was treating the government's motion to dismiss as a motion for summary judgment. After summarizing the facts of the case, the district court recited the summary judgment standard and the general principles of the FTCA applicable here. The district court then summarized the evidence in the case and concluded that "the United States cannot be liable for Edwards' alleged negligence." (J.A. 83). In the next sentence, the district court indicated that the government's motion to dismiss was "[g]ranted." (J.A. 83).
 
 
 10
 On January 28, 1994, Arnold filed a motion requesting relief from judgment pursuant to Fed.R.Civ.P. 60(b). On March 23, 1994, the district court denied the motion, holding that it lacked subject matter jurisdiction over the controversy. In its order, the district court clarified the confusing nature of its previous order, characterizing its pre vious order as one dismissing the complaint for lack of subject matter jurisdiction. See Fed.R.Civ.P. 12(b)(1).
 
 
 11
 This appeal ensued.
 
 II
 
 12
 "The Federal Tort Claims Act, like all waivers of sovereign immunity, must be strictly construed in favor of the sovereign." Thigpen v. United States, 800 F.2d 393, 394 (4th Cir.1986). The FTCA provides for a limited waiver of the sovereign immunity of the United States for the torts of government employees committed within the scope of their employment. However, this waiver applies only when the employee was "acting within the scope of his employment" under circumstances that would impose liability on a private employer. 28 U.S.C. Sec. 1346(b). "The legislative history[of the FTCA] ... indicates that Congress intended to permit liability essentially based on the intentionally wrongful or careless conduct of Government employees, for which the Government was to be made liable according to state law under the doctrine of respondeat superior." Laird v. Nelms, 406 U.S. 797, 801 (1972).
 
 
 13
 To establish a relationship of respondeat superior under North Carolina law, the following must be proven: (1) an injury by the negligence of the wrongdoer; (2) the relationship of employer-employee between the party to be charged and the wrongdoer; (3) a wrong perpetrated in the course of employment or within the employee's scope of authority; and (4) an employee going about the business of his superior at the time of the injury. Van Landingham v. Singer Sewing Machine Co., 177 S.E. 126, 127 (N.C.1934). Accidents occurring while an employee is commuting to and from work in the absence of some special benefit to the employer in the commute, do not arise out of or occur in the course of the employee's duties or employment. Wright v. Wake County Public Schools, 405 S.E.2d 228, 229 (N.C.App.1980). This "going and coming" rule is based on the principle that liability cannot be imputed to the employer in the absence of the right and power to command or direct the employee in the performance of the act or omission charged. Gupton v. United States, 799 F.2d 941, 943 (4th Cir.1986).
 
 
 14
 It is well settled that the burden of proving subject matter jurisdiction is on the plaintiff. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir.1982). Subject matter jurisdiction may be refuted on a factual basis rather than merely on the face of the pleading. For example, a defendant may assert "that the jurisdictional allegations of the complaint [are] not true." Id. In such an instance, the district court is not obligated to accept the plaintiff's allegations as true. Id. In assessing the plaintiff's jurisdictional allegations, the district court may "go beyond the allegations of the complaint" to determine whether "there are facts to support the jurisdictional allegations." Id. In assessing the sufficiency of the jurisdictional allegations, the court "may consider evidence by affidavit, depositions or live testimony without converting the proceeding to one for summary judgment." Id. In contrast to the inquiry under Rule 12(b)(6), under Rule 12(b)(1) the court "weighs the evidence to determine its jurisdiction." Id.
 
 
 15
 The circumstances surrounding the accident make clear that Sergeant Edwards was not acting within the course and scope of his employment at the time of the accident, and, therefore, subject matter jurisdiction was lacking in this case. We shall assume for the purpose of argument that Arnold was injured as a result of Sergeant Edwards' negligence. Sergeant Edwards, a member of the Army, was driving his personal automobile at the time of the accident. In addition, Sergeant Edwards was not, at the time of the accident, travelling in a direction toward Battalion Headquarters, but rather toward his friend's house. In light of these facts, it cannot be meaningfully argued that Sergeant Edwards was acting within the scope of his authority or engaged in the business of his employer, the United States, at the time of the accident. Under North Carolina respondeat superior law, the United States would not be liable for Sergeant Edwards' actions. Consequently, Arnold has not met his burden of proving subject matter jurisdiction in this case, and, therefore, his complaint was properly dismissed by the district court. Fed.R.Civ.P. 12(b)(1).[6]
 
 III
 
 16
 For the reasons stated herein, the judgment of the district court is affirmed.
 
 AFFIRMED
 
 
 [1]
 Interestingly, the affidavits of both Arnold and Godwin state in conclusory terms only that Sergeant Edwards was engaged in official business. These affidavits enumerate no facts which would support such a conclusion
 
 
 [2]
 This conversation, without Sergeant Edwards' knowledge, was recorded by Lennon
 
 
 [3]
 Arnold's version is supported by a purported transcript of the conversation. See (J.A. 38-40). Sergeant Edwards' version is supported by his sworn affidavits. See (J.A. 20-21 and 46-47)
 
 
 [4]
 Once it was learned that Lennon recorded this conversation, Sergeant Edwards listened to the tape and concluded that it was incomplete and did not contain the entire conversation. Sergeant Edwards stated in his affidavits that the tape did not include the portion of the conversation where Lennon told him that it would be better for him to say that he was using his personal car in an official capacity
 
 
 [5]
 Notably, Battalion Headquarters was located to the south of Sergeant Edwards' office
 
 
 [6]
 In light of the obvious weakness of Arnold's FTCA claim against the United States, we also believe that it would have been appropriate for the district court to treat the motion of the United States to dismiss as one for summary judgment and enter judgment in favor of the United States, once proper notice was given to Arnold that the motion to dismiss was being treated as one for summary judgment