■   In the Matter of the Arbitration between DEERING MILLIKEN, INC., Respondent, and FAB INDUSTRIES, INC., Appellant.—Judgment, Supreme Court, New York County, entered April 30, 1975, denying a stay of arbitration and directing that the parties proceed to arbitration, affirmed, with $40 costs and disbursements of this appeal to petitioner-respondent. Appeal from the order of the Supreme Court, New York County, entered April 22, 1975, denying reargument, unanimously dismissed as nonappealable, without cost and without disbursements. Deering Milliken, Inc., had sold certain textile goods to Fab Industries, Inc., and demanded arbitration of disputes as to nine of these contracts. The disputed contracts were dated between December 14, 1973 and April 18, 1974. The parties had done business since February, 1973 and had entered into a total of 50 contracts. Each contract designated Deering as the seller and Fab as the buyer and each contained a broad arbitration clause. The contracts, though allegedly misaddressed to Boston, Massachusetts, were received and accepted at that address. The 90 invoices related to these 50 contracts all designated Fab as the account vendee. Fab paid for the goods sold with 33 "Fab" checks and mailed the remittances in Fab envelopes. Clearly, the course of conduct of the parties indicates that the business dealings were between Fab and Deering. Fab's position that another entity, Frontier Urethane Corp., was the true purchaser is belied by the above facts. The execution of the contracts in question by the recipient, when containing a designation of a principal, referred to Fab as well, although there may have been a further designation of Frontier as a joint recipient. The fact remains that Fab's initial request of Deering to grant credit to Frontier was denied; however, Deering remained

willing to, and in fact did, extend credit to Fab. The overwhelming documentary evidence reveals a course of business dealings between Deering and Fab over a period of time well encompassing the period during which the nine contracts in question were executed. The nine contracts themselves clearly designate Deering and Fab as the principal parties. We must therefore conclude that no useful purpose would be served by directing a hearing as to the true contracting parties, since it would involve a belaboring of the obvious. The parties should proceed directly to arbitration. Concur—Kupferman, J. P., Lupiano, Capozzoli and Lane, JJ.; Murphy, J., dissents in the following memorandum: I would reverse the determination below and hold the matter in abeyance pending a hearing on the factual issues in dispute. The sole issue raised in this proceeding is whether appellant is, or should be deemed to be, the purchaser of certain specialized textile goods. Appellant is a publicly owned company primarily engaged, with its subsidiaries, in the business of manufacturing and marketing knitted textile fabrics. In 1973 it formed a new venture with one Charles Edison (who was also the principal of his own company, International Fabrics Corp.), then called Frontier Urethane Corp., to engage in the urethane and vinyl artificial leather business. Appellant acquired 80% of Frontier's stock for $280,000. Edison, who became Frontier's president and chief operating officer, acquired the other 20% of Frontier's stock for $70,000. After appellant refused to guarantee Frontier's purchases, respondent sold Frontier quantities of urethane under contracts containing a broad arbitration provision. Payments for the goods were made by appellant, using its own checks, but with a remittance attached to each bearing a code number and a legend indicating the particular subsidiary or division being charged or for whose account the payment was being made. Additionally, the record before us discloses that respondent's contracts were typically made out to "Fab. Ind. Inc./International Fab. Corp.", mailed to Frontier in Boston (appellant had no office there) and executed by the recipient in a manner clearly disclosing that Frontier was the purchaser. On essentially these disclosed facts, Special Term granted petitioner's motion to compel appellant to arbitrate its claim of nonpayment of several such contracts, reasoning that appellant had, by its course of conduct and failure to object to its designation as the buyer therein (and in others previously paid) "ratified" them (relying on Uniform Commercial Code, § 2-201, subd [2]; § 2-207, and this court's decision in *Matter of Levin-Townsend Computer Corp. v Holland*, 29 AD2d 925). In my view such reliance, in the present posture of the proceeding, is misplaced; and begs the issue. If, as appellant contends, it was not a party to any contract with respondent, it had no obligation to object to the written confirmations or contracts. In light of appellant's refusal to guarantee Frontier's obligations when requested by respondent to do so, the listing of Edison's company as a copurchaser, the manner in which the contracts were signed and the indication on each prior payment that appellant's check was for the accommodation of Frontier, appellant is entitled, at the very least, to an evidentiary hearing to ascertain the true identity of the purchaser herein. In short, a finding that appellant is bound by the agreements in issue, as a matter of law, must rest on a firmer foundation than the submissions contained in the instant record. Accordingly, the order and judgment (one paper) appealed from should be reversed and the applications held in abeyance pending a trial of the disputed factual issues raised.